IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ROGER D. MCAFEE,                )
                                )
         Plaintiff,             )
                                )
v.                              ) Case No. CIV-19-216-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
         Defendant.             )

**OPINION AND ORDER**

Plaintiff Roger D. McAfee (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 55 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked

3

in the past as a truck driver. Claimant alleges an inability to work beginning July 1, 2016 due to limitations resulting from vision problems, hypertension, depression, hypolipidemia, and obesity.

## Procedural History

On January 26, 2017, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. ' 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 5, 2018, Administrative Law Judge ("ALJ") David Engel conducted a hearing in Fort Smith, Arkansas. On December 7, 2018, the ALJ entered an unfavorable decision. On June 24, 2019, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform medium work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination; and (2) failing to adequately consider all of Claimant's limitations at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of age-related macular degeneration and hypertension. (Tr. 17). The ALJ concluded Claimant could perform medium work. In so doing, the ALJ found Claimant could lift, carry, push, or pull up at a medium exertional level but he was unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. Claimant was also found by the ALJ to be unable to perform tasks requiring visual acuity (defined as a distance of 20 feet or more – e.g., eyesight needed to operate a forklift or other motorized equipment) more than occasionally and was unable to perform tasks requiring night vision more than occasionally. The ALJ stated Claimant could understand, remember, and carry out simple to moderately detailed instructions and was able to interact with co-workers and supervisors under routine supervision.

Claimant was found to be afflicted with symptoms from a variety of sources including moderate intermittent complaints of

5

pain and fatigue of sufficient severity so as to be noticeable to him but was still able to remain attentive and responsive in a work setting and was able to perform work assignments within the limitations stated by the ALJ in the RFC.  (Tr. 19).

After consulting with a vocational expert, the ALJ concluded Claimant was capable of performing the representative jobs of hand packager and dining room attendant, both of which were determined to exist in sufficient numbers in the national economy.  (Tr. 24). As a result, the ALJ concluded Claimant was not under a disability from July 1, 2016 through the date of the decision.  Id.

Claimant first states with little support that his age and other health problems such as obesity, high blood pressure, high cholesterol, high triglycerides, "and other similar risk factors for heart disease and other ailments" makes his performance of medium work as "too strenuous."  Claimant cites to no medical opinion evidence which supports this bald conclusion.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any

6

substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Claimant was diagnosed with the referenced conditions does not translate them into severe impairments.

Moreover, Claimant had a Body Mass Index of 39.77 and was considered obese. However, Claimant's obesity was specifically noted by the ALJ and the evaluating physicians. (Tr. 17, 72, 83-84). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is

7

evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[1] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.). After considering Claimant's obesity, no further limitation was found in the medical record or Claimant's testimony. (Tr. 17). The ALJ did not err in failing to find any of the conditions noted by Claimant to preclude Claimant's performance of work at the medium exertional level.

Claimant next asserts that the ALJ erred in the assessment of the limitations posed by his macular degeneration. In May of 2017, Claimant's vision was evaluated by Dr. Denise Hill. She noted Claimant was not complaining of physical ocular symptoms, not experiencing routine headaches or double vision, did not report visual floaters or light flashes and was not experiencing blurry or uncomfortable vision. His vision was corrected to 20/70 in the right eye and 20/50 in the left. Claimant's condition was considered stable with no change. (Tr. 349-50). In November of 2017, Claimant's vision was corrected to 20/40 in the right eye

---

[1] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

8

and 20/60 in the left. The age-related macular degeneration remained stable. (Tr. 353).

Claimant contends that he cannot engage in work activity for two hours out of an eight hour workday as required for medium work in light of his vision problems. Nothing in any of the medical records reaches the conclusion urged by Claimant. He appears to argue that the presence of pigment clumping, metamorphopsia in the right eye, and a central defect in the right eye warrants such a restriction. Indeed, Claimant's own reporting to Dr. Hill belies such limitations. Contrary to Claimant's representation in the briefing, he repeatedly denied any blurry, double, or uncomfortable vision. (Tr. 270, 349, 352). He also stated that he continued to drive, although he tried not to drive at night. (Tr. 48, 237-38). This activity would be inconsistent with Claimant's current position concerning the level of his limitations attributable to his vision. The evaluation by agency physicians Dr. Penny Aber and Dr. Timothy Honigman support the ALJ's findings, concluding "claimant is not stat blind and see (sic) well enough to avoid normal hazards in the workplace." (Tr. 71-71, 83-84). Accordingly, this Court finds no error in the level of restriction found by the ALJ in the RFC on the basis of

Claimant's macular degeneration.

Defendant does admit that a conflict exists between the findings of Dr. Aber and Dr. Honigman and the ALJ's RFC with regard to near visual acuity. The agency physicians found Claimant's near acuity was limited in both eyes. (Tr. 72, 82). The ALJ did not address near acuity in the RFC. (Tr. 19). This omission, however, represents harmless error as at least one of the jobs identified by the vocational experts which Claimant could perform requires not near acuity. The *Dictionary of Occupational* Titles specifically states that the job of dining room attendant shows "Near Acuity:  Not Present – Activity or condition does not exist." DOT 311.677-018, 1991 WL 672696. The vocational expert testified that 220,000 of these jobs exist in the national economy. (Tr. 59). The identification of this job in these numbers is sufficient for this Court to conclude that "[a]ny reasonable trier of fact would be compelled to conclude that [220,000] is a significant number of jobs for purposes of a step-five determination." Bainbridge v. Colvin, 618 F. App'x 384, 392 (10th Cir. 2015). As a result, the failure to include the near acuity limitation in the RFC constitutes harmless error.

In the continuing litany of issues raised under the objection

to the RFC, Claimant contends that the ALJ did not fully incorporate his mental limitations in the RFC.  In his decision, the ALJ found that Claimant's primary care physician, Dr. Beena Syed, noted that Claimant's medication was improving his depression symptoms.  (Tr. 17).  He also found that the medical record contained not evidence of mental health treatment in 2018 and that Claimant took himself off of his psychotropic medication. (Tr. 18).  The ALJ also analyzed Claimant's mental condition under the four broad areas of mental functioning under the paragraph B criteria for evaluating whether Claimant's condition met or equaled a listing.  He concluded Claimant only experienced mild limitations under each of the four functional areas and, therefore, concluded that Claimant's condition did not meet Listing 12.00. (Tr. 18).  The ALJ's conclusions were consistent with the evaluation performed by Dr. Carolyn Goodrich in June of 2017. (Tr. 80-81).

Claimant argues that the ALJ ignored the fact that he stopped taking the medication because it made him suicidal.  Claimant also states that while Dr. Syed found his depression to be "mild" and that "[Claimant] is coping well", Claimant reported an inability to manage his stress and depression.  (Tr. 344, 361).  Based upon

11

Claimant's statements, Dr. Syed prescribed Effexor, referred Claimant for counseling, and suggested relaxation techniques. (Tr. 364). The ALJ's conclusion that Claimant received minimal mental health treatment is supported by the medical record. Any deviation from a finding of satisfactory coping with the mental conditions were precipitated by Claimant's statements. The record does not support mental health limitations in excess of those imposed by the ALJ.

Claimant also contends the ALJ should have ordered a consultative psychological evaluation. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available

12

medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

>      (5) There is an indication of a change in your
> condition that is likely to affect your ability to work.
>
>      20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative mental health examination exists in the record.  The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

Claimant also asserts that the RFC conflicts with the medical evidence that he has difficulty following instructions.  The only indication of such difficulty arises from Claimant's subjective statements and not a medical finding.  (Tr. 240).  No other evidence in the record supports such a limitation.

Claimant states that the ALJ failed to include a restriction of frequent urination caused by the medication he is prescribed. The ALJ considered Claimant's testimony that he used the bathroom eight to ten times per hour every day and needed to be close to the bathroom.  (Tr. 20, 55).  However, Claimant referenced that his medication had not side effects on numerous occasions in the medical record.  (Tr. 231, 242, 249).  The ALJ's failure to include this limitation in the RFC is part and parcel of his overall evaluation of Claimant's subjective statements and finding

14

that he overstated his limitations – a finding that Claimant also challenges.

The ALJ found that Claimant's statements of limitations were inconsistent with the objective evidence. (Tr. 21). He referenced Claimant's inconsistent hearing statements concerning the extent of his vision problems with the statements he made to medical professionals including that he did not experience blurry or double vision and his activities including driving. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5)

15

treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.  While the term "credibility" has been eliminated from the regulations, the evaluation criteria of a claimant's subjective statements have essentially not changed.

The ALJ relied upon appropriate factors in evaluating Claimant's statements.  The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities, and the inconsistencies in Claimant's reported symptoms and his hearing testimony all form specific and legitimate reasons for the ALJ's questioning of reliability of Claimant's subjective statements.

### Step Five Evaluation

Claimant also challenges the hypothetical questioning of the vocational expert upon whose testimony the ALJ relied in finding

16

two jobs available in the national economy which Claimant could perform.  This challenge, however, is premised upon Claimant's contention that the ALJ's RFC was faulty and erroneous – a contention rejected by this Court.  No error is found in the ALJ's step five analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE